EMMA C. LETTS v. CHARLES E. LETTS.

*Will—Estates of deceased persons—Husband and wife—Divorce—
Settlement—Receipt—Evidence.*

1. Where a father, just prior to his death, conveyed to his son
   and daughter *all* of his real estate, which he had devised to
   them, and delivered to the son a note, realized from the sale
   of property devised to the daughter, to be delivered to her,
   which was done after his death, by which acts he disposed of
   all of his estate, the probate of the will is unnecessary.
2. The sole heirs and legatees of a testator, in the absence of
   creditors, may dispose of the property as they see fit.   *Foote v.
   Foote,* 61 Mich. 181, 190.
3. Where a wife delivered a note held by her against her husband
   to him, with the understanding that it was paid, and that he
   was to use the money due upon it in his business until she
   called for it, her action lies, not upon the note, but for such
   money, which will be considered as loaned to the husband at
   time of receiving the note.
4. Pending divorce proceedings a wife agreed to receive a specified
   sum as permanent alimony, and, after a decree was granted
   her, signed a receipt for the money as received in full satis-

faction of the agreement, and of alimony, and of all other claims and demands, of whatsoever nature, against the defendant; and in a suit afterwards brought by her against the husband for money claimed to have been loaned him during marriage, it is held competent for her to explain the receipt, and to testify that she did not understand she was receipting for anything but her alimony, and that nothing was said as to its cutting off her right to recover the money sued for.

5. The court has no jurisdiction to settle the claims of a wife against her husband for her separate property in a suit by her for divorce. *Peck v. Peck,* 66 Mich. 586.

Error to Wayne. (Brevoort, J.) Argued October 26, 1888. Decided November 28, 1888.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Wilkinson & Post,* for appellant, contended:

1. Plaintiff was entitled to enforce the note in her own name, it appearing that it was turned over to her by her brother, who was alone interested in the estate with her; citing *Foote v. Foote,* 61 Mich. 181, 190, and cases there cited; *Needham v. Gillett,* 39 Id. 574; *Kennedy v. Shaw,* 43 Id. 359; *Brown v. Forsche,* Id. 500; *Mitchell v. Mitchell,* 68 Id. 108.

*John W. McGrath,* for defendant, contended:

1. The legal title of the note was and is in the estate of Mahlon Wines; citing *Morton v. Preston,* 18 Mich. 60.

2. In the absence of the receipt in full for all claims, and upon the theory that the only question adjusted under the stipulation was that of alimony, having set up *this* claim, and taken a decree which is silent upon this subject, plaintiff is bound and estopped thereby; citing *Pauly v. Pauly,* 69 Wis. 419.

3. Plaintiff undertook to show that she signed the receipt under the advice of her solicitor, and that it did not include the claim in the note. This fact was not communicated to defendant, and a mistake of law will not furnish a basis for or aid a recovery; citing *Martin v. Hamlin,* 18 Mich. 354.

MORSE, J. The plaintiff brought suit against the defendant, declaring upon, the common counts in *assumpsit,* and filing the following bill of particulars:

" 1. The plaintiff claims for the amount due on a certain promissory note given by defendant to Mahlon Wines, and by him transferred to plaintiff, which note bore date about April 17, 1867, and was for $800, with interest at the rate of 7 per cent. per annum, on which was indorsed one year's interest, and on which $10 were paid by defendant to plaintiff within six years prior to the commencement of this suit, and after the note was transferred to her.

" 2. Plaintiff also claims an amount for money loaned by her to defendant on or about June 1, 1881, with interest thereon from that date at the rate of 7 per cent. per annum, the amount of money so loaned being about $1,528."

The defendant pleaded the general issue, and gave notice of the statute of limitations in defense; also that the plaintiff, in 1883, and prior thereto, was the lawful wife of the defendant; that in 1883 or 1884 they were divorced, at which time defendant paid over to her the sum of $8,000, which payment was not only in full of all alimony, but of "all other claims and demands of whatsoever nature against this defendant;" and that said sum was received by the plaintiff, and was by her receipted for, as and for all demands, inclusive of the claim or demand set up in this suit.

The note which forms the basis of the plaintiff's claim was executed by defendant of date May 22, 1867, payable to the order of Mahlon Wines in ten years from its date. Mahlon Wines was the father of plaintiff, and died leaving a will, which was never probated, April 15, 1868. He left surviving him two children, the plaintiff and Charles H. Wines.

The claim of the plaintiff is that her father, a few days before his death, handed the note to her brother, who was named as his executor in his will, and told him to take the same into his care as custodian of his estate, and keep it; that the note was to belong to plaintiff,

and to see that she got the pay upon it. He did not tell him to pass the note over to plaintiff. The brother of plaintiff kept the note about a year, and then mailed it to her. Mrs. Letts kept the note until June or July, 1881, at which time she swears her husband came and demanded the note. He said he wanted to take it up. She told him she did not wish the money. She said:

"You need the money in your business, and I am willing you should keep it."

He threw down a roll of bills on the table. She picked up two five-dollar bills, and said:

"I will take ten dollars. The rest you keep in your business. When I want it, I will call for it."

Her husband took the note and the balance of the money away with him. She does not know how much there was of the money he threw on the table. She claims the amount of the note and interest to date, less the payment of this $10, and one payment of interest made in 1868.

The defendant denies any such occurrence as the one above stated, but claims that he received the note from his wife in 1881. She gave it to him, saying it was as much his as hers, and therefore surrendered it up to him. On the cross-examination of the defendant, he was asked by the plaintiff's counsel to produce the note, and did so. Across its face was written: "Paid June 20, 1881." On the back of the note was indorsed—

"CHELSEA, Oct. 4, 1868.
"Received on the within note fifty-six dollars ($56)."

The following also appeared upon the note:

"DETROIT, ——, 1870.
"This note was received by me from Charles H. Wines, in accordance with a provision in the will of the said Mahlon Wines, and I hereby acknowledge payment in full of the same."

The counsel for plaintiff then offered the note in evidence, but the court excluded it, on the ground that it was made payable to the order of Mahlon Wines, and had never been indorsed by him. He also offered to show by the defendant that he wrote, "Paid June 20, 1881," and also the writing above·set forth, and that he presented the note to his wife, and requested her to sign such writing, and that she refused to do so. He also offered to show in whose handwriting was the indorsement of $56. The court refused to allow any of these facts to be shown. The court also, at the close of the testimony, directed a verdict for the defendant, upon the ground that no title to the note had been shown in the plaintiff.

We think the court was in error in his rulings upon the admission of evidence, and in his direction of the verdict.

It was offered to be shown by plaintiff's counsel before the case was submitted to the jury that the will of plaintiff's father had never been probated; that by the will he disposed of the property he then had. He willed his real estate to Charles H. Wines and plaintiff, who were his only children. The will was made in 1862. The note in this suit came from the proceeds of property sold after he executed his will, which in such will was devised to plaintiff. Before he died he disposed of all his property, deeding the real estate to the said children, and placing this note in the hands of Charles for the plaintiff. This rendered it unnecessary to probate the will. The court refused to allow this showing, because the testimony had been closed. The counsel claimed, as a reason why this testimony should be admitted, that he supposed the will had been probated until he went to get a certified copy of the same.

It was entirely immaterial whether the handing of the note by the father to Charles H. Wines, and his direc-

tions, was a valid gift of the note or not. The note was delivered by the brother to the sister as her property, and no one has complained about it for 20 years, and it does not appear that any one has any right to complain. The brother and sister, being the sole heirs and legatees of their father, and no creditors appearing, had a right to divide the property as they saw fit. *Foote v. Foote*, 61 Mich. 181, 190 (28 N. W. Rep. 90), and cases there cited; *Needham v. Gillett*, 39 Id. 574.

It seems also that the defendant acknowledged her right to the note when he received it of her, and it was competent to show that he wrote the indorsements upon the note, and to admit the note in evidence to show its amount and the indorsements. The fact that he wrote, "Paid June 20, 1881," on the note, would have some tendency to corroborate the claim of plaintiff, and also to fix the time when the note was received by defendant; and if her theory was true, and this was the date of the transaction, the cause of action was not outlawed; this suit being commenced May 18, 1887.

The fact that the note had never been indorsed over to plaintiff by her father or his legal representatives has no bearing upon the case. She is not seeking to recover upon the note. If, as she claims, the defendant took the note with the understanding that it was paid, and he was to use the money due upon it in his business until she called for it, her action lies, not upon the note, but for the money due on it at the time it was taken by the defendant as paid, which must be considered as loaned to him at that date.

We do not pass on the question whether or not the court should have permitted plaintiff's counsel to show what he proposed as to the will, etc., after the case had been closed, as this evidence can be given on a new trial, which must be granted.

The defendant's counsel further insists that the plaintiff could in no event recover, because in her bill for divorce filed against the defendant for cruelty, and in which suit she was successful, she made claim for this same money, and the matter was adjudicated and settled in that suit. The following receipt was, with others, introduced in evidence:.

"Received from Charles E. Letts four thousand dollars in cash, and his note for an additional four thousand dollars at thirty days, which, together with the furniture therein named, and which has been received by me, is in full satisfaction of the agreement hereto attached, and in full of alimony, and of all other claims and demands, of whatsoever nature, against the above-named Charles E. Leets.

[Signed] "EMMA C. LETTS."

We do not think the plaintiff was barred by the divorce. proceedings alone. If she gave this receipt understandingly, and meaning to settle this claim, then she cannot recover here. The divorce proceedings are made a part of the record, and we do not find that the money claimed to be due here was contested in the divorce case outside of the pleadings. She claimed it was due her in her testimony, but in the decree of the court no reference is made to the subject, and it is evident that nothing was submitted to the court save the question of divorce. It seems that a decree was granted without any reference to alimony whatever. But there was an agreement between the parties, executed during the pendency of the divorce suit, by which it was stipulated that, in case of an absolute decree of divorce being granted, the husband should pay to the wife the sum of $8,000 as permanent alimony ;—  ·

"Such sum to be in full, and in lieu thereof the complainant [plaintiff] is to release all rights of dower and homestead. "

This agreement was outside of the cause in court, and cannot be considered as a part of the proceedings. The plaintiff claims that she did not understand that she was settling the money owing to her by reason of this note; that she did not read the receipt. It was read to her by her counsel, Mr. Larned. The plaintiff offered to prove that she did not understand that she was receipting for anything but her alimony, and nothing was said as to its cutting off her right to recover the money for which she sues here. This was excluded. This was error. She had a right to explain the receipt. We do not think that plaintiff's claim for this money was barred by this decree. The whole money matter seems to have been withdrawn from the divorce suit before it was submitted; and, if not withdrawn, the court had no jurisdiction to settle the claims of the wife against the husband for her separate property in the divorce proceedings. Such recovery must be sought in an independent suit. *Peck v. Peck,* 66 Mich. 586 (33 N. W. Rep. 893, 896); *Uhl v. Uhl,* 52 Cal. 250.

The parties entered into an agreement as to alimony. It is for a jury to determine, under all the circumstances, whether this agreement and the fulfillment of it settled the plaintiff's claim in this suit. It is not specifically mentioned in the agreement, but the withdrawal of the money claims from the divorce suit, the agreement, the payment of the money, and the receipt, taken together, are conclusive, without explanation, against her. But she has the right to explain the receipt, and to show, if she can, that the matter was not settled.

We find no other questions necessary to be discussed. The judgment must be reversed, and a new trial granted, with costs.

The other Justices concurred.